JOHN P. CRONNIE, ET AL., v. HENRY MONSH, ET AL.

**Implied Contract—Construction.**

> Where in a written contract a person agrees that he will, during the year, furnish ice to a dealer, at an agreed price, and the purchaser agrees to pay such price for so much of the ice as might be delivered to him, the law implies an agreement upon his part to receive and pay for the ice.

APPEAL FROM JEFFERSON CIRCUIT COURT.

January 29, 1875.

OPINION BY JUDGE LINDSAY:

The written agreement entered into by Cronnie and Monsh on the 1st day of April, 1870, bound Cronnie to furnish to Monsh northern ice for the year 1870, at fifty-five cents per hundred pounds, or eleven dollars per ton. It bound Monsh to pay at said rates for the ice delivered to him at stipulated intervals, and in all other respects to comply with the terms of said agreement.

Contemporaneous with the execution of this written agreement, Monsh, with Hilger, executed and delivered to Cronnie a bond in the penal sum of one thousand dollars, by which he was obliged to pay on said ice, and in all other respects to keep and perform his part of the agreement.

There is no express stipulation incorporated into either of the writings, binding Monsh to demand and receive ice at the agreed price; and Cronnie insists that on account of the want of such an express agreement on the part of Monsh, the contract is void for the want of mutuality.

When all the language used by the two parties in the two writings is considered together, it is manifest that notwithstanding their failure to state in express terms that Monsh was to receive and pay the stipulated price for some quantity of ice, yet in point of fact he did so agree. In the case of a mutual written agreement, the express stipulation with reference to any particular point, connected with the subject-matter by one party, raises under the circumstances of such a case as this, a corresponding implied contract by the other. When Cronnie agreed in writing that he would, during the year 1870, furnish to Monsh ice at an agreed price, and Monsh undertook to pay said price for so much of the ice as might be delivered to him, the law implied an agreement upon his part to demand, receive and pay for a quantity of ice, exceeding, at the least, the quan-

tity or weight recited in the agreement, as the standard by which the price was to be fixed and determined. The writings before us are doubtful in their import, but in such cases, when a rational and not improbable construction can be given to a contract, it will be adopted, in order that it may be held to have some effect.

But Cronnie objects further, that if it be conceded that Monsh was bound by the contract to accept ice and pay the agreed price, the quantity he was to receive is left wholly a matter of conjecture, and therefore that the contract should be treated as void and inoperative for the want of certainty.

Where a writing, without the aid of extraneous proof, evidences an enforceable contract, it "may be read by the light of surrounding circumstances, in order more perfectly to understand the intent and meaning of the parties." 1 Greenleaf on Evidence, Sec. 277.

Appellant, by his answer, sets out the surrounding circumstances, in the light of which the writings under consideration are to be read, in order to determine the quantity of ice Monsh agreed to receive and pay for. He says Monsh applied to him to purchase so much northern ice, and no more, as he could, by the running of one ice wagon, retail to his customers in the city of Louisville for and during the year 1870. He shows the object and purpose Monsh had in buying the business in which he was engaged, and the disposition he intended to make of the ice for which he was contracting. It is true these facts do not appear in the petition and amended petition to which appellant demurred; but as, according to our construction of the writings, the pleading of Monsh entitled him to recover at least nominal damages, and therefore the general demurrers were properly overruled, the answer of Cronnie may be considered to illustrate the propriety of the rule of allowing obscure and uncertain writings to be read by the light of surrounding circumstances.

As the court below did not err in overruling the general demurrers, the judgment appealed from must be *affirmed.*

*Gibson & Gibson, G. V. Hanks, for appellants.*
*John M. Harlan, B. H. Allen, for appellees.*